222 Pa. Superior Ct. 400 (1972)
Trenton Trust Company, Appellant,
v.
Klausman.
Superior Court of Pennsylvania.
Argued March 24, 1972.
September 15, 1972.
*401 Before WRIGHT, P.J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.
Gilbert Newman, with him Blank, Rome, Klaus & Comisky, for appellant.
Henry Y. Goldman, with him Gold, Bowman & Korman, for appellees.
OPINION BY PACKEL, J., September 15, 1972:
This controversy involves the liability of the appellees, Mark and Michael Klausman, on a note executed by their corporation, The Shoe Rack, Inc., payable to the bank appellant.[1] The instrument was endorsed as follows:
*402
 "Mark Klausman, Sec.
 Lionel Klausman, Vice Pres.
 Michael Klausman, Pres.
 The Shoe Rack
 Mark Klausman, Sec."
The appellant's complaints asserted that the appellees endorsed in their personal capacities. The appellees by preliminary objections contended they endorsed the note in their representative capacities as officers of The Shoe Rack and that therefore the appellant failed to state a cause of action. The preliminary objections were sustained and the complaints dismissed.
This is not a case of determining whether officers or their corporation should be held liable. The corporation is undoubtedly liable but the question is whether the officers did or did not add their personal liability. The narrow issue presented to our Court is whether it was so clear as a matter of law that the endorsements were given in a representative capacity that the appellant was correctly precluded from introducing evidence to the contrary.
In analyzing the capacity in which endorsements are affixed, it is necessary to consider not only each word and signature within the four corners of the instrument, but also the position, style and arrangement of the whole writing. Why would the appellees have endorsed in a representative capacity after having already signed as makers of the note for their corporation? Just as Judge WATKINS observed in Elkay Mfg. Co. v. Chasco Supply Co., 219 Pa. Superior Ct. 530, 535, 281 A. 2d 765, 767 (1971), that it was "illogical and unlikely to have the [corporate] customer act as his own guarantor," so it is in this case, equally unclear why officers would endorse a note in their official capacity after issuing the same instrument for their corporate principal. Was appellee Mark Klausman endorsing *403 in a representative capacity not only when he placed his signature immediately beneath the corporate name towards the bottom of the reverse side of the note, but also when he had earlier placed his signature nearly four inches above the business name near the top of the note? Conversely, it can properly be asked why are the official titles after the signatures if there was an intention that there be personal liability. Because answers to these questions do not readily spring from the face of the instrument, this is a classic case of ambiguity.
Prior to the adoption of the Uniform Commercial Code, it was well established that when there is ambiguity whether a signature was affixed in an individual or representative capacity "and [especially where] the litigation is between the original parties to the instrument, parol evidence is admissible to show the facts and circumstances attending its execution," in order to resolve that question, Dormont Sav. & Tr. Co. v. Kommer, 338 Pa. 548, 553, 13 A. 2d 525, 527 (1940). This is not a specialized rule of negotiable instruments law but an early recognized principle of general applicability in commercial litigation, Smith v. Philadelphia Nat'l. Bank, 1 Walk. 318 (1877) (though signatures on letters written on bank stationery were followed by corporate title, evidence was admissible to show that correspondence intended an individual transaction.)
This principle is given clear recognition in Section 3-403(3) of the Uniform Commercial Code of April 6, 1953, P.L. 3, as reenacted, 12A P.S. § 3-403(3): "Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity." [Emphasis added]. To hold that appellant should not have the opportunity to prove that the endorsements were made in a personal capacity *404 is to read all meaning out of the italicized portion of the above quoted subdivision specially added by the legislature in 1959. The design of the last two paragraphs of the section is to provide norms for ascertaining the actual capacity denoted by ambiguous signatures on a negotiable instrument. Except for subsection 2(a) (agent signing without any indication of representative capacity) it is clear that these standards represent presumptions only because of the words "except as otherwise established."
We should not attempt to resolve the instant dispute by attempting to force the facts to fit into example (c) of the five examples given in the comment to Section 3-403 which is described as "the unambiguous way to make the representation clear." We should not overlook that the text of the Code was enacted by the legislature; the comments were not. Professor Honnold has observed that: "Surely the Comments may be given at least as much weight as an able article or treatise construing the Code. It is equally clear that the Comments do not approach the weight of legislation; if the statutory provisions adopted by the legislature contradict or fail to support the Comments, the Comments must be rejected. The point is significant, for we shall see instances, easily understood in the light of the Comments' bulk and the many successive revisions of the Code, where the Comments contradict the statute. More frequent are instances of enthusiastic discussion of significant problems on which the statute is silent." Farnsworth and Honnold, Cases and Materials on Commercial Law, 9 (1968); see Skilton, "Some Comments on the Comments to the Uniform Commercial Code," 1966 Wis. L. Rev. 597.
In developing commercial law the judicial role is to aid in moulding standards which provide an orderly framework for carrying out the expectations of businessmen. *405 Application of this principle to commercial litigation requires a delicate balancing of the truth seeking interest in ascertaining the intent of the parties together with the truth protecting interest in preserving the security of writings free of perjuries and other frauds. In adopting Section 3-403 of the Code the draftsmen and legislators apparently intended to exclude extrinsic evidence of capacity only in the limited case where one signs an instrument without adding any indication of acting in the capacity of an agent.[2] Cases of patent ambiguity, like the instant one, are proper instances for favoring the admission of evidence to discover the true understanding of the parties.
The orders of the lower courts entering judgments for the appellees are reversed and the cases remanded.
DISSENTING OPINION BY CERCONE, J.:
The Trenton Trust Company appealed to this court from the lower court's holding that as a matter of law endorsers of a note made payable to it were not personally liable on the note. The face of the note was signed as follows:
 "The Shoe Rack
 X Mark Klausman, Sec.
 X Lionel Klausman, Vice Pres.
 X Michael Klausman, Pres."
The back of the note was endorsed as follows:
 "X Mark Klausman, Sec.
 X Lionel Klausman, Vice Pres.
 X Michael Klausman, Pres.
 The Shoe Rack
 X Mark Klausman, Sec."
*406 The question is whether Mark Klausman, Lionel Klausman, and Michael Klausman, officers of "The Shoe Rack" corporation, are personally liable on the above endorsement.
Section 3-403 of the Uniform Commercial Code of April 6, 1953, P.L. 3, Section 3-403, as amended, 12A PS 3-403, provides as follows: "(2) An authorized representative who signs his own name to an instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity; (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.
"(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity." (Emphasis supplied)
In the comment to said section the following examples are given, each assuming "Peter Pringle" to be the principal and "Arthur Adams" to be the agent:
 "(a) Peter Pringle
 (b) Arthur Adams
 (c) Peter Pringle by Arthur Adams, Agent
 (d) Arthur Adams, Agent
 (e) Peter Pringle
 Arthur Adams"
It is clear that the manner of endorsement in this particular note did not expressly fall within any of the above five examples. However, my determination is that it most closely resembles the example "c" in view of the fact that all the officers have signed with their *407 titles following their names and the name of the corporation appears following their signatures. The only difference between this manner of endorsement and example "c" is that the signatures of the agents precede the name of the corporation-principal and the word "by" is omitted. I do not find such differences, however, call for any interpretation different than that given to example "c" in the comment above mentioned, which is that: "The unambiguous way to make the representation clear is to sign as in (c). Any other definite indication is sufficient . . ." (Emphasis supplied) It is my opinion that by including their official titles after their signatures and thereafter stating the name of the corporation, the endorsers gave definite and unambiguous indication that they were signing in behalf of the corporation only.
I cannot agree with appellant that the case falls within example "d" of the comment above quoted, calling for oral evidence to ascertain the intent of the parties. In this case the corporate name clearly appears as part of the endorsement following the signatures of the officers as officers. The fact that the secretary's signature again appears after the corporate name is not inconsistent with the provision of Section 3-403(3) above quoted and the application thereof above made.
The conclusion of this dissent is in accord with this court's decision in Elkay Manufacturing Company v. Chasco Supply Co., 219 Pa. Superior Ct. 530 (1971), wherein we reversed the lower court's entry of a judgment on the pleadings in favor of the individual signers of the Guarantee where no corporate principal was disclosed. This court there refused to supply as the corporate principal the customer named in the body of the Personal Guarantee, the court holding it would be unreasonable to interpret the corporation as guaranteeing its own debt. In the case now before us, as *408 above shown, the corporate principal was revealed and disclosed in the endorsement, and therefore we are not required to look elsewhere to supply a deficiency of a named principal or permitted to pass upon the reasonableness of supplying an unnamed principal. The individual defendants in this case, by signing as officers, in their representative capacity, and disclosing their principal, did not make themselves personally liable under the governing law as above set forth. That the actual intent of the parties may not have been in conformity with this application of the law is unfortunate. If the intent of the parties has not been achieved the fault lies not in the law we are required to apply, but in the appellant trust company's failure to require an endorsement in conformity with its alleged intent.
In Flexlume Corp. v. Norris, 98 Pa. Superior Ct. 530, 534 (1930), relied on by this court in the Elkay Manufacturing Co. case, supra, the court pointed out: "The court below based its decision upon the theory that defendant signed as agent for a disclosed principal, but the difficulty is that nowhere in the paper does defendant disclose the true name of the corporation for which he now claims to have been acting as agent. The name `Osce-Y-Ola Sales Corporation' does not appear any place on the face of the instrument and it is difficult to see, on the record as presented, how plaintiff could have had any knowledge or notice that it was in reality dealing with that corporation or how a suit could be brought on the contract against the alleged principal. This material fact, which is ignored throughout the brief for appellee, distinguishes the present case from those therein cited.
"This case seems to fall within the rule that, if an agent would avoid personal liability, the duty is on him to disclose his principal, and not on the party with whom he deals to discover it: 21 R.C.L. 895, Sec. 69; 2 *409 C.J. 816, Sec. 491. The person dealing with an agent may be chargeable with notice of the agency by virtue of the surrounding circumstances (2 C.J. 820, Sec. 494) but the burden is upon the agent to establish such notice. The present record is barren of any evidence upon this question."
In the case now before us, the true name of the corporate principal was disclosed in the endorsement. It is my determination, therefore, that the court below did not err in holding as a matter of law that the officers were not personally liable on the note and that parol evidence was not admissible to challenge their endorsements in their respective capacities as officers of the corporation only.
Accordingly, I would affirm the judgment.
WRIGHT, P.J., and WATKINS, J., join in this dissenting opinion.
NOTES
[1] These are consolidated appeals from a judgment obtained in Montgomery County in favor of Mark Klausman and a judgment obtained in Philadelphia County in favor of Michael Klausman.
[2] Subdivision (2) (a) of § 3-403. The other pertinent subdivisions (2) (b) and (3) begin with the words: "Except as otherwise established."